IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2015

## KEVIN LEWIS v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Hamilton County
No. 284665   Barry A. Steelman, Judge

_____

### No. E2014-02070-CCA-R3-PC – Filed September 3, 2015

_____

The Petitioner, Kevin Lewis, appeals as of right from the Hamilton County Criminal Court's partial denial of his petition for post-conviction relief. On appeal, the Petitioner contends that his trial counsel was ineffective for failing to argue to the jury that the State did not prove the element of "sexual contact" accompanying his conviction for aggravated sexual battery and for failing to impeach a witness. In response, the State asserts that the post-conviction court erred when it vacated and dismissed the Petitioner's conviction for aggravated kidnapping after concluding that trial counsel was ineffective for failing to mount a challenge to the sufficiency of the evidence on direct appeal. The State also responds that the post-conviction court did not err when it denied the Petitioner's remaining claims. Following our review, we reverse the post-conviction court's ruling dismissing the aggravated kidnapping charge against the Petitioner because we conclude that the court should have vacated the judgment without dismissing the charge in accordance with Tennessee Code Annotated section 40-30-111. In all other respects, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
Affirmed in Part; Reversed in Part & Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

W. Scott Ray, Chattanooga, Tennessee, for the appellant, Kevin Lewis.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant District Attorney General; Neal Pinkston, District Attorney General; and Lance Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of aggravated kidnapping, aggravated sexual battery, and aggravated assault. The Petitioner's convictions were upheld on direct appeal. See State v. Kevin R. Lewis, No. E2010-10267-CCA-R3-CD, 2011 WL 3243685 (Tenn. Crim. App. July 29, 2011), app. dismissed (Tenn. Oct. 27, 2011), perm. app. denied (Apr. 9, 2014). On direct appeal, this court summarized the following factual account underlying the Petitioner's convictions:

> This case arises from the [Petitioner's] sexual assault upon a woman to whom he gave a ride home from a nightclub. . . . At trial, the State's evidence established that, in November 2008, the victim was at a nightclub celebrating her friend's birthday when an acquaintance introduced her to the [Petitioner]. The [Petitioner] seemed "pretty cool," and she danced and talked with the [Petitioner] for approximately an hour. Soon, the victim was tired and ready to leave, but her friend was not. The [Petitioner] offered to give her a ride home, and she accepted. The victim had consumed only three alcoholic beverages by this point, so she was not staggering or otherwise unable to control her speech or movement.
>
> The victim testified that, on the way to her home, the [Petitioner] pulled the car into a parking lot and turned off the car. After he and the victim talked for a few minutes, the [Petitioner] suddenly grabbed the victim by her ponytail and violently jerked her head down. At the same time, the victim felt the [Petitioner] poke her with a knife. As the [Petitioner] continued to try to force her head down, the victim grabbed the keys from the ignition and tried to stab the [Petitioner] with the keys. The next thing the victim knew, the [Petitioner] had pulled the victim by her ponytail out of the car through the passenger door and was holding her head down on the hood of the car. The victim testified that the [Petitioner] pulled the victim's pants and underwear down, and he urinated on her body. The victim was screaming, and, because the [Petitioner] had unfastened his belt, she believed the [Petitioner] was going to rape her. Responding to a report of a loud disagreement between a male and a female, a police car pulled into the parking lot and shined its lights on the [Petitioner] and the victim. Rather than comply, the [Petitioner] continued to kiss and stroke the victim's neck. When the officer repeated her command, the [Petitioner] stepped away from the victim, who quickly ran to police. Police recovered a knife from the [Petitioner's] car and arrested the [Petitioner].

<u>Id.</u> at *1.

On July 25, 2012, the Petitioner filed a pro se petition for post-conviction relief, alleging multiple grounds of ineffective assistance of counsel. On August 12, 2012, the post-conviction court appointed counsel, and an amended petition was filed on December 12, 2013. The Petitioner alleged that trial counsel was ineffective for failing to mount a challenge to the sufficiency of the evidence on direct appeal, for failing to assert during closing argument that the State did not meet its burden by proving an element of aggravated sexual battery, and for failing to impeach the victim. A post-conviction hearing was held on July 11, 2013.[1]

At the hearing, trial counsel testified that he was the second attorney appointed to represent the Petitioner and that he represented the Petitioner at trial. Trial counsel had been practicing criminal law for approximately three years at the time of the Petitioner's trial, and he had tried both bench and jury trials. Trial counsel met with the Petitioner on "numerous occasions" prior to trial, and they discussed trial strategy, potential witnesses, and how to conduct the pre-trial investigation. Trial counsel testified that he and the Petitioner discussed the importance of highlighting the inconsistencies between the two arresting officers' and the victim's recounting of the crime. According to trial counsel, the Petitioner agreed with this trial strategy.

Trial counsel testified that he researched the offenses that the Petitioner was charged with prior to trial. He understood that sexual contact was an element of aggravated sexual battery, and, therefore, that the State could not convict the Petitioner unless that element was proven beyond a reasonable doubt. Trial counsel could not recall whether the relevant police reports contained a statement that there were "intentional touchings [sic] of [the victim or the Petitioner's] private parts." According to trial counsel, he conducted legal research regarding the definition of unlawful sexual contact. Trial counsel also recalled asking both of the officers who testified at trial whether any sexual contact was reported.

Although trial counsel recalled the prosecutor's stating in his closing argument that "pulling down the pants, panties of another constitute[s] sexual contact," trial counsel admitted that he did not object to that statement. He explained that objecting during closing argument "would have made [him] look pretty bad in front of the jury, and the jury judges a client . . . a lot based on their attorney." When asked whether he thought the prosecutor's statement was a correct explanation of the law, trial counsel responded, "I think that's what a fact-finder is for. If you're pulling down the panties and in doing

---

[1] Although the Petitioner made numerous allegations of ineffective assistance in both his original and amended petitions for post-conviction relief, we recount only those portions of the post-conviction hearing which are relevant to the issues presented in this appeal.

so you're touching the private parts, I think there are cases that are going to indicate that . . . would be included as sexual contact then." Trial counsel agreed that, during closing argument, he did not specifically argue that the State had failed to prove the element of sexual contact.

Trial counsel agreed that one of the arresting officers testified that the Petitioner's pants were unzipped upon arrival at the scene. When asked whether trial counsel believed that would be evidence of sexual contact, he replied that "[i]t seems like circumstantial evidence of something leading to it or something having just happened, sure." Trial counsel acknowledged that no one testified about who actually unzipped the Petitioner's pants. According to trial counsel, he chose not to bring this issue up in closing argument because he instead wanted to focus on discrepancies in witness testimony.

Trial counsel agreed that he did not cross-examine the victim about contradictory statements she made at the preliminary hearing. At the preliminary hearing, the victim denied that the Petitioner told her that he wanted to have sex with her before the assault took place. However, at trial, the victim testified that the Petitioner did make a statement about having sex with her. Also at the preliminary hearing, the victim testified that she was "bleeding from her head and her neck" after her confrontation with the Petitioner. However, both officers testified at the trial and preliminary hearing that the victim was not bleeding. Trial counsel testified that he sought to point out the discrepancy between the victim's preliminary hearing testimony and the officers' account of the incident, although he could not "remember who specifically said what about the bleeding." Trial counsel testified that this approach comported with his overall strategy to point out inconsistencies between the victim's and the officers' accounts of the details of the assault.

Trial counsel testified that he attempted to have the transcript of the preliminary hearing admitted into evidence at trial, but the trial court did not allow it. He testified that, had he decided to impeach the victim, he would have used the transcript to do so rather than playing the recording of the preliminary hearing. Trial counsel also recalled that communicating with the victim in the courtroom was difficult because she claimed to be hard of hearing and "had difficulty understanding anything anybody was saying."

Trial counsel explained that his goal in closing argument was to pick "the most important points to hammer home the themes of the case, and as a matter of strategy, [he] picked the themes that [he] thought were most important, the . . . inconsistencies from that day specifically, not stories about the [victim]." Trial counsel further explained that

[the victim] wasn't exactly a sympathetic witness, but she was more what I would call a pathetic and pitiful witness, and I wanted to be very careful in front of the jury not to just beat her up. I wanted to discredit her as much as I could and show that she was somebody who was not credible, and I think you could do that without picking on her . . . .

With respect to the handling of the Petitioner's direct appeal, trial counsel testified that he missed the deadline for filing an application for permission to appeal to the Tennessee Supreme Court because he miscalculated the due date. He agreed that this mistake resulted in summary dismissal of the application for permission to appeal. See Tenn. R. App. P. 11(b).

Trial counsel agreed that he made a motion for judgment of acquittal at trial and that, in doing so, he was asserting that the State failed to prove the elements of the offenses as set forth in the indictment. When deciding what issues should be raised on direct appeal, trial counsel reviewed the trial transcript "quite a bit looking for any issue [he] could have found . . . ." Trial counsel acknowledged that sufficiency of the evidence is a common ground raised on appeal, but he explained that, in his opinion, that particular issue was often raised frivolously. Trial counsel further opined that he thought that in certain circumstances, challenging the sufficiency of the evidence was "a sign to the [appellate] court" that counsel did not really believe a defendant had a strong case on appeal. Therefore, trial counsel made a strategic decision to focus on an issue that he did believe had merit, rather than to include a sufficiency challenge. Trial counsel added that his review of the record led him to believe that the State presented sufficient evidence to support the Petitioner's conviction for aggravated sexual battery.

On October 31, 2013, the post-conviction court granted the Petitioner a delayed appeal to the Tennessee Supreme Court after finding that trial counsel was ineffective for missing the deadline for filing an appeal to the supreme court following this court's denial of relief on direct appeal. The post-conviction court reserved ruling on the Petitioner's remaining claims pending resolution of the delayed appeal. Our supreme court denied the Petitioner's application for permission to appeal on April 9, 2014.

On October 10, 2014, the post-conviction court filed an order denying in part and granting in part the remaining issues presented by the Petitioner in his petition for post-conviction relief.

The post-conviction court rejected the Petitioner's claim that trial counsel was ineffective for failing to argue that the State did not prove the element of sexual contact. The post-conviction court noted that the evidence at trial showed that the Petitioner pulled the victim out of his car, pulled her towards his crotch, pinned her head to the

hood of the car, unbuttoned her pants, pulled her underwear down, and unbuttoned and pulled his own pants down. The post-conviction court concluded that, considering the above-mentioned evidence presented at trial, trial counsel was not ineffective in determining that the evidence was sufficient to establish sexual contact and was likewise not ineffective for choosing not to pursue that issue on direct appeal.

The post-conviction court further concluded that the Petitioner had failed to prove that trial counsel was ineffective for not impeaching the victim. The post-conviction court accredited trial counsel's testimony that his decision not to impeach the victim was strategic. Specifically, the post-conviction court noted trial counsel's explanation that he was concerned that if he cross-examined the victim aggressively, he would lose favor with members of the jury.

The post-conviction court then granted the Petitioner post-conviction relief on his claim that trial counsel was ineffective for not challenging the sufficiency of the evidence accompanying his aggravated kidnapping charge on direct appeal. The post-conviction court determined that the State had failed to prove the Petitioner's actions in detaining the victim "were not beyond what was necessary to consummate the intended sexual assault." The post-conviction court concluded that the Petitioner was entitled to "vacation of the conviction and sentence for aggravated kidnapping" and noted that it did not "find any ground for a new trial or an enlarged delayed appeal." It is from this order that the Petitioner and the State now appeal.

## ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective for failing to argue to the jury that the State did not meet its burden of proving sexual contact, which is an element of the offense of aggravated sexual battery, and for failing to impeach the victim with her testimony from the preliminary hearing. In response, the State asserts that the post-conviction court exceeded its authority when it dismissed the Petitioner's aggravated kidnapping charge. The State contends that the post-conviction court should have either vacated or set aside the judgment without dismissing the charge or, instead, ordered a delayed appeal. The State further responds that the post-conviction court properly denied relief on the Petitioner's remaining claims of ineffective assistance of trial counsel.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const.

amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The Petitioner first contends that trial counsel's performance was deficient because he failed to argue to the jury that the State had not proven a required element of aggravated sexual battery: unlawful sexual contact. The Petitioner asserts that "[a] basic principle of criminal defense is to focus on whether each element of each offense has been sufficiently proven by the prosecution" and that, because no direct evidence of sexual contact was offered, "trial counsel should have emphasized, or at least mentioned this point to the jury in his closing argument."

It is well-established that, in post-conviction proceedings, "we should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation." Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Additionally, although "[t]he right to

-7-

effective assistance of counsel extends to opening and closing arguments . . . counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his or her opening or closing argument is particularly important." Torrez Talley v. State, No. W2009-02036-CCA-R3-PC, 2011 WL 1770485, *4 (Tenn. Crim. App. May 9, 2011) (internal citations omitted). Trial counsel testified that he made a strategic decision to focus on discrepancies in witness testimony during closing argument, a strategy which he testified that the Petitioner agreed to. Trial counsel further testified that "[i]n the closing, [an attorney] has just a couple minutes to talk to the jury[,] . . . [and he] picked the themes that [he] thought were most important . . . ." In his closing argument, trial counsel pointed out discrepancies between testimony from the arresting officers and from the victim. Likewise, he reminded the jury that it could not convict the Petitioner without evidence that proved his guilt beyond a reasonable doubt.

Trial counsel also testified that he thoroughly researched the offenses charged in the indictment and that he researched the definition of unlawful sexual contact. Trial counsel believed that, based on the totality of the evidence presented, there was ample evidence from which the jury could infer that unlawful sexual contact occurred. The post-conviction court accredited trial counsel's testimony in this respect. Although the Petitioner may now believe that trial counsel should have argued specifically that the element of sexual contact was not proven during closing argument, we will not second-guess trial counsel's reasonable, strategic decision to focus his closing argument on another issue. See Hellard, 629 S.W.2d at 9. The Petitioner has failed to prove that trial counsel's performance was deficient, and his issue in this respect is without merit.

Next, the Petitioner contends that trial counsel was ineffective for failing to impeach the victim during her trial testimony. The Petitioner avers that the victim's trial testimony differed substantially from her preliminary hearing testimony and asserts that, had trial counsel properly impeached her, the jury would have known that the victim "was telling falsehoods under oath . . . [and it] would have resulted in a verdict of not guilty for [the Petitioner] on all counts."

At the post-conviction hearing, trial counsel admitted that he did not impeach the victim with respect to her conflicting trial and preliminary hearing testimony. Trial counsel testified that he did try to point out inconsistencies between the testimony that the victim provided and the testimony of the two arresting officers. However, trial counsel characterized the victim as "pathetic and pitiful" and, therefore, expressed concern that the jury might think he was bullying the victim if he cross-examined her too aggressively.

The post-conviction court found that any failure to impeach the victim was not prejudicial to the Petitioner "considering the overwhelming evidence of the Petitioner's guilt." When officers arrived on the scene, they observed that the Petitioner had the

victim pinned up against the car and her pants and underwear had been pulled down. Additionally, officers were able to respond to the scene so quickly because the victim was crying out in such a way that she drew attention to the ongoing assault. Therefore, although the victim might have given inconsistent testimony regarding whether the Petitioner mentioned having sex prior to the assault or that she was bleeding following the assault, we cannot conclude that the outcome of the case would have been different if trial counsel had impeached the victim on these two points. We conclude that trial counsel's decision in this regard was not prejudicial to the Petitioner.

We now turn to the State's argument that the trial court exceeded its authority when it dismissed the Petitioner's aggravated kidnapping conviction. The post-conviction court granted the Petitioner relief on this issue after analyzing the sufficiency of the evidence underlying the aggravated kidnapping conviction pursuant to the Dixon two-part test, which was the law at the time of the Petitioner's trial and appeal. See State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), overruled, State v. White, 362 S.W.3d 559 (Tenn. 2012). We note that the State does not challenge the post-conviction court's determination that trial counsel was ineffective for failing to challenge the sufficiency of the evidence supporting the Petitioner's aggravated kidnapping conviction. Therefore, we consider only whether the post-conviction court's actions with respect to the remedy were in accordance with Tennessee Code Annotated section 40-30-111(a). The Petitioner does not offer a response to the State's argument in this respect.

Tennessee Code Annotated section 40-30-111 provides as follows:

> If the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable, including a finding that trial counsel was ineffective on direct appeal, the court shall vacate and set aside the judgment or order a delayed appeal as provided in this part and shall enter an appropriate order and any supplementary orders that may be necessary and proper.

Based on this subsection, we agree with the State that the post-conviction court was without authority to dismiss the aggravated kidnapping charge against the Petitioner. Section 40-30-111 provides for two remedies after a post-conviction court's determination that trial counsel was ineffective: (1) to vacate and set aside the judgment; or (2) to order a delayed appeal. This section does not grant the post-conviction court the authority to dismiss the charge against a petitioner. See Sterling Lamar Cooper v. State, No. E2012-00383-CCA-R3-PC, 2013 WL 326209, at *4 (Tenn. Crim. App. Jan. 29. 2013) (noting that "[d]ismissal of charges is not a remedy prescribed by the Post-Conviction Procedure Act"). Therefore, we reverse the post-conviction court's dismissal of the aggravated kidnapping charge, but we affirm the post-conviction court's vacation

-9-

of the aggravated kidnapping conviction.  See <u>Fred Edmond Dean, aka Omawali Ashanti Shabazz v. State</u>, No. E1998-00135-CCA-R3-PC, 2011 WL 2749536, at *3-7 (vacating the petitioner's conviction following the grant of post-conviction relief and remanding to the trial court for further proceedings) <u>aff'd sub nom.</u>, <u>Dean v. State</u>, 59 S.W.3d 663 (Tenn. 2001).

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE